UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Select Distributors, LLC *et al*,

           Plaintiffs,    Case No. 20-12944

v.    Judith E. Levy
United States District Judge

Breeze Smoke, LLC *et al*,

    Mag. Judge Elizabeth A.
           Defendants.    Stafford

_____/

# OPINION AND ORDER PERMANENTLY GRANTING DEFENDANT/COUNTER-PLAINTIFF BREEZE SMOKE'S MOTION FOR A PRELIMINARY INJUNCTION [22]

Before the Court is Defendant/Counter-Plaintiff Breeze Smoke, LLC's motion for a preliminary injunction against Plaintiff/Counter-Defendant Select Distributors, LLC. (ECF No. 22.)

## BACKGROUND

On January 21, 2021, the Court held a hearing on this motion through audio-visual technology due to the ongoing COVID-19 pandemic. For the reasons set forth on the record, the Court temporarily granted Defendant's requested injunction through 11:59 p.m. on Friday, January

29, 2021. (ECF No. 51.) In the same order, the Court allowed the parties a week to resolve the case on their own terms and ordered a status update by noon on January 29, 2021. (*Id.*)

On January 29, 2021, the parties notified the Court that they were unable to reach a resolution regarding their dispute. (ECF No. 53.) Accordingly, for the reasons set forth below and on the record on January 21, 2021, the Court will grant Defendant's requested permanent injunction.

The background of this case, including the Court's detailed reasoning for its grant of this injunction, is set forth on the record of the January 21, 2021 hearing. (ECF No. 54.) During this hearing, the Court ruled that Defendant had demonstrated the four elements necessary to justify a preliminary injunction:

> 1) the likelihood that the party seeking the injunction will succeed on the merits of their claim;
>
> 2) whether the party seeking the injunction will suffer irreparable harm absent the injunction;
>
> 3) the probability that granting the injunction will cause substantial harm to others; and
>
> 4) whether the injunction will advance the public interest.

*See Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).

For the same reasons as those set forth on the record, the Court finds now that all four elements continue to weigh in favor of issuing the permanent injunction. However, the Court will clarify one aspect of the likelihood-of-success analysis below.

**LIKELIHOOD OF SUCCESS ON THE MERITS**

Likelihood of success on the merits is the most important factor in determining whether a preliminary injunction is appropriate. *See Louisiana-Pacific Corp. v. James Hardie Building Products, Inc.*, 928 F.3d 514, 517 (6th Cir. 2019) ("As long as a [movant] demonstrates *some* likelihood of success on the merits, a court should balance rather than tally the[ preliminary injunction] factors.").

The Lanham Act governs the merits of this case. Section 43(a) of the Lanham Act governs claims for infringement of unregistered trademarks and trade dress. 15 U.S.C. § 1125(a). To prevail on such a claim, a movant must show that:

    1) The movant has a protectable trademark or trade dress right; and

    2) An infringer has created a likelihood of confusion, mistake, or deception as to the origin of goods as a result of the infringer's use of the mark or dress.

*See id.*; *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005).

For the reasons set forth on the record, the Court concluded the following:

- Defendant's *trademark* was protectable;
- Plaintiff had created a likelihood of confusion, mistake, or deception as to the origin of goods as a result of its use of the *trademark*;
- Defendant's *trade dress* satisfied at least two out of the three elements of protectability; and
- Plaintiff had created a likelihood of confusion, mistake, or deception as to the origin of goods as a result of its use of the *trade dress*.

(ECF No. 54.)

These four findings were sufficient to determine that Defendant was likely to succeed on the merits of its claim and that, in conjunction with the other factors of the preliminary injunction analysis, an injunction was warranted.

However, the Court took under advisement one element of the trade dress infringement analysis, which it now addresses more fully. To prove

4

trade dress infringement, a party must demonstrate by the preponderance of the evidence that

> 1) the trade dress is not functional;
>
> 2) the trade dress is distinctive in the marketplace or has acquired "secondary meaning," thereby indicating the source of the goods; and
>
> 3) the trade dress of the accused products is confusingly similar.

*Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. 2006). For the reasons set forth on the record, the Court concluded that Defendant had satisfied the first and third element of a trade dress infringement claim: Defendant demonstrated both that the trade dress was not functional, and that the trade dress of the accused products is confusingly similar. (ECF No. 54.) However, the Court took under advisement whether Defendant had satisfied the second element: that the trade dress is either distinctive or has acquired "secondary meaning" for consumers in the marketplace. The Court now clarifies that Defendant has not demonstrated either that its trade dress is distinctive or that it has achieved secondary meaning. Though this finding does not change the preliminary injunction analysis—the temporary injunction

was appropriately issued on January 21, 2021 and is appropriately continued on a permanent basis today—the Court wishes to expand upon its reasoning in this opinion and order.

"For purposes of the Lanham Act, distinctiveness comes in two forms, either one of which satisfies the distinctiveness condition of protectability." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 635 (6th Cir. 2002). "A mark or dress can be inherently distinctive if its 'intrinsic nature serves to identify a particular source.' A non-inherently distinctive mark or dress can have acquired distinctiveness through attachment of secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark or dress] is to identify the source of the product rather than the product itself." *Id*.

Thus, Defendant can satisfy this element of trade dress protectability by demonstrating either that its dress is inherently distinctive, or that the dress has achieved a secondary meaning within the marketplace.

<u>Secondary Meaning</u>

6

Defendants have not demonstrated secondary meaning. To show secondary meaning, "the evidence must show that in the minds of the public, the primary significance of the trade dress is to identify the source of the product rather than the product itself." *Gen Motors Corp.*, 468 F.3d at 418. Courts apply a seven-factor test to determine whether secondary meaning exists in a trade dress context:

> 1) Direct consumer testimony;
> 2) Consumer surveys;
> 3) Exclusivity, length, and manner of use;
> 4) Amount and manner of advertising;
> 5) Amount of sales and number of customers;
> 6) Established place in the market; and
> 7) Proof of intentional copying.

*Id.* at 418.

Breeze Smoke's argument as to these factors is brief:

> The evidence shows that consumers understand that the BREEZE Marks and Trade Dress emanate from Breeze Smoke, a market leader and highly reputable company in the industry. Breeze Smoke has continuously sold vaping products with the BREEZE Marks since May 2019 and the BREEZE Trade Dress since March 2020. It has spent millions of dollars advertising its BREEZE vaping products and sold tens of millions of dollars of products bearing the BREEZE marks and BREEZE Trade Dress. The evidence also shows that Counter-Defendants intentionally copied Breeze Smoke's

7

> BREEZE Marks and BREEZE Trade Dress. These facts demonstrate that the BREEZE Marks and BREEZE Trade Dress have acquired secondary meaning and merit protection.

(ECF No. 23, PageID.207-208.)

Even with this brief response, some of Breeze Smoke's evidence weighs in its favor. As set forth on the record, Breeze Smoke's affidavits tend to suggest 1) through numerous consumer reactions that the Breeze Smoke dress is recognizable by at least some consumers; 3) that Breeze Smoke has been using its Trade Dress since March 2020; and 4) that Breeze Smoke has spent millions of dollars advertising its products bearing the marks and dress. (ECF No. 54.)

However, for the reasons set forth on the record, Defendant has not shown compelling evidence of 5) amount of sales and number of customers; 6) Defendant's established place in the market; 7) intentional copying; or 2) consumer surveys. This last requirement is particularly important, as the Sixth Circuit "has historically favored the use of consumer surveys as proof of secondary meaning," *Gen. Motors Corp.*, 468 F.3d at 419. Particularly without evidence of the place of Defendant's trade dress in the market as compared to other competitors' trade

8

dresses, the Court cannot find that Defendant has demonstrated that its trade dress has achieved secondary meaning.

Inherent Distinctiveness

Nor has Defendant demonstrated that its trade dress is inherently distinctive. As to distinctiveness, Defendant's analysis is similarly brief:

> Breeze Smoke's BREEZE Trade Dress is also inherently distinctive. The BREEZE trade dress features: a rectangular clear plastic outer box with a clear plastic lid; brightly colored cardboard with product labeling that wraps around the bottom portion of the clear plastic box; visibility of the top portion of the vaping pen through the top portion of the clear plastic box; the BREEZE Mark displayed prominently and vertically along the body of the vaping pen; and a semi-opaque plastic cap over the mouthpiece. Nothing about the BREEZE Trade Dress directly describes the product or is generic; it is unique, inherently distinctive and therefore protectable even without a showing of secondary meaning.

(ECF No. 23, PageID.207.) Notably, Defendant does not identify in its motion a particular test for determining distinctiveness. Additionally, whereas Defendant focuses its distinctiveness argument on merely describing its own product packaging, the Sixth Circuit's distinctiveness test is concerned with comparing the packaging at issue with those of others in the market:

9

> [A]ny packaging may be said to have inherent distinctiveness by virtue of the breadth of colors, shapes, graphics, etc., available to the packager in designing its trade dress. In determining the strength of such trade dress, however, the analysis is different as the inquiry revolves around the "uniqueness" of the packaging.

*Gray v. Meijer, Inc.*, 295 F.3d 641, 647-48 (6th Cir. 2002) (approving the district court's finding that the trade dress was not distinctive because "[n]either the elements of the packaging, nor the product itself were exclusive or unique . . . [for example,] the term 'Chicago Style' has been widely used for many years for a variety of products"). This emphasis on distinctiveness *as compared to competitors in the market* comports with the Federal Trademark Manual's requirement that a party demonstrate distinctive "product packaging trade dress" through examination of the following four factors, famously articulated in *Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*:

1) Whether the packaging is a "common" basic shape or design;
2) Whether the packaging is unique or unusual in a particular field;
3) Whether the packaging is a mere refinement of a commonly adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods; or

10

> 4) Whether the packaging is capable of creating a commercial impression distinct from the accompanying words.

TMEP § 1202.02(b)(ii) (citing *Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977)).

Because Defendant does not provide the Court with any information to compare the distinctiveness of its trade dress with others in the market—such as whether the product packaging is "common," "unique," or "a mere refinement of [] well-known form[s] of ornamentation for [its] particular class of goods"—the Court cannot find that Defendant's trade dress is distinctive on the information before it.

Though Defendant has not demonstrated on these facts that its trade dress has achieved either distinctiveness or secondary meaning, the Court reiterates its conclusion on the record that Defendant has satisfied the two other elements for trade dress protection: Defendant demonstrated both that the trade dress was not functional, and that the trade dress of the accused products is confusingly similar. *Gen. Motors Corp.*, 468 F.3d at 414. As the Court concluded during the preliminary injunction hearing, Defendant has therefore achieved "some likelihood of success" on the merits, which requires the Court to balance—rather than

11

tally—the other injunctive factors. *See Louisiana-Pacific Corp.*, 928 F.3d at 517.

**THE REMAINING PRELIMINARY INJUNCTION FACTORS**

These remaining preliminary injunction factors—irreparable injury, balancing of harms, and the public interest—continue to weigh overwhelmingly in favor of continuing the injunction. Importantly, Defendant clearly demonstrated that Plaintiff created a strong likelihood of confusion as to both the dress and the mark, which "[i]n trademark infringement causes [automatically] satisfies the irreparable injury requirement." *Lucky's Detroit, LLC v. Double L, Inc.*, 533 Fed. Appx. 553, 555 (6th Cir. 2013). Additionally, as the Court set forth on the record, the balance of the harms and the public interest also weigh heavily in favor of protecting Defendant's mark and dress, as well as preventing consumers from being misled. (ECF No. 54.)

Accordingly, for the reasons set forth in this opinion and order, as well as for the reasons set forth on the record on January 21, 2021, the Court finds that all four preliminary injunction favors weigh in favor of transforming the temporary injunction into a permanent one. Therefore, subject to the conditions set forth on the record and the following:

IT IS ORDERED THAT Plaintiffs/Counter-Defendants Select Distributors, LLC, SD Import, LLC, and Noor Kestou, and any of their agents, successors, assigns, and/or others in active concert or participation with them are enjoined from directly or indirectly using the capitalized mark "BREEZE" or any other mark or name including or incorporating the capitalized mark "BREEZE" and Defendant's BREEZE packaging trade dress shown below, or any other packaging or trade dress that is confusingly similar thereto as described by the Court on the record, in connection with tobacco or vaping products, or any other related products or services; and



13

IT IS FURTHER ORDERED that this injunction, effective immediately, shall extend permanently.

IT IS SO ORDERED.

Dated: February 8, 2021　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 8, 2021.

　　　　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　　　　Case Manager